Rosemary MARSCHHAUSER, Denise Marschhauser, and James Edward Marschhauser, a minor child, by and through his parent, natural guardian, and next friend, George Marschhauser, Plaintiffs,

v.

The TRAVELERS INDEMNITY COMPANY, the Israeli Consulate General of Miami, Florida, and the Nation State of Israel, Defendants.

No. 91–1764–CIV.

United States District Court,
S.D. Florida.

Dec. 21, 1992.

Roy D. Wasson, William E. Ploss, Miami, FL, for plaintiffs Marschhauser, et al.

Gregory A. Victor, Adorno & Zeder, P.A., Miami, FL, for defendants Israeli Consulate General of Miami, Florida and Nation State of Israel.

James O. Nelson, Miami, FL, for defendant Travelers Indem. Co.

## ORDER DENYING MOTION FOR ENTRY OF DEFAULT

HIGHSMITH, District Judge.

THIS CAUSE comes before the Court upon Plaintiffs Rosemary Marschhauser, Denise Marschhauser, and James Edward Marschhauser's Motion for Entry of Default, filed September 2, 1992.

## BACKGROUND

On June 22, 1989, Rosemary Marschhauser was involved in a two-car rear-end collision. At the time of the accident, Rahamin Timor, the driver of the second automobile, was a member of the Israeli Consulate General of Miami, Florida ("Consulate"), an Israeli mission located in Dade County, Florida. Rahamin Timor's automobile was owned by the Consulate.

Plaintiffs filed this cause of action on August 14, 1991, naming the Nation State of Israel ("Israel") and the Consulate as defendants, along with their liability insurer, the Travelers Indemnity Company ("Travelers"). On March 27, 1992, Marschhauser prepared a Request for Service Abroad, which was issued by United States Magistrate Judge Linnea R. Johnson. (Plaintiff's Motion for Entry of Default, D.E. # 17). This request, along with a summons and a copy of the amended complaint, was addressed to the Central Authority designated by Israel to receive requests for service coming from foreign states, in accordance with the Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, Art. 2, November 15, 1965 ("Hague Service Convention"), [1969] 20 U.S.T. 361, T.I.A.S. No. 6638. The documents were sent by Federal Express to the Central Authority, who received them on March 31, 1992.

On July 1, 1992, Marschhauser received a letter from A. Shenan, an administrator of the State of Israel, stating that Marschhauser's request for service did not comply with Israel's ratification of the Hague Service Convention, because it was not sent by a judicial authority. (D.E. # 17). Shenan's letter is the only response sent by any Israeli authorities in response to Marschhauser's attempts to perfect service on Israel.

Marschhauser followed a similar procedure in an attempt to perfect service on the Consulate. On June 4, 1992, Marschhauser prepared a Request for Service Abroad, which was issued by United States Magistrate Judge Peter R. Palermo. Israel's Central Authority received this request and accompanying documents on June 11, 1992. As of this date, Marschhauser has not received a response to the Request for Service Abroad on the Consulate.

Marschhauser filed a Motion for Entry of Default against Israel and the Consulate on September 2, 1992. (D.E. # 17). On September 30, 1992, the law firm of Adorno & Zeder, P.A., entered a special limited appearance as attorneys for the Israeli Consulate General of Miami, Florida and the Nation State of Israel. (Notice of Special Limited Appearance, D.E. # 27). The law firm expressly noted that its appearance was for the limited purpose of responding to the Plaintiff's Motion for Entry of Default. *Id.* On October 1, 1992, Israel and the Consulate filed a Response to Marschhauser's Motion for Entry of Default. (D.E. # 28).

## THE HAGUE SERVICE CONVENTION

The Hague Service Convention is a multilateral, international treaty ratified by twenty-three nations, including the United States and Israel. *Arco Electronics Control Ltd. v. Core Intl.,* 794 F.Supp. 1144, 1146 (S.D.Fla.1992). The primary purpose of the Convention is to provide a simplified way to serve process abroad, to assure that defendants sued in foreign jurisdictions receive actual and timely notice of suit, and to facilitate proof of service abroad. *Volkswagenwerk A.G. v. Schlunk,* 486 U.S. 694, 698, 108 S.Ct. 2104, 2107, 100 L.Ed.2d 722 (1988). "The primary innovation of the Convention is that it requires each state to establish a central authority to receive requests for service of documents from other countries." *Id.* at 698–99, 108 S.Ct. at 2107. After the central authority receives the request, it *must*

serve the documents by the method prescribed by the internal law of the receiving state. Hague Service Convention, Art. 5. The central authority must then complete a certificate stating that the documents have been served and forward this certificate to the applicant. *Id.,* Art. 6. If the document has not been served, the certificate must set out the reasons that have prevented service. *Id.*

The Convention also provides sharp restrictions against the imposition of default judgments against defendants residing in other convention states. Bruno A. Ristau, *International Judicial Assistance* 154 (1990). A default judgment may not be entered unless the plaintiff demonstrates that actual or substituted service was made on the defendant, or that service was effected by a method normally employed by the receiving state in domestic actions against its own residents. Hague Service Convention, Art. 15, ¶ 1. "The second full paragraph of Article 15, however, weakens this protection." *International Judicial Assistance* at 154. That paragraph allows contracting states to declare that their courts will be allowed to enter judgment by default, without proof of service, if:

(1) the document was actually transmitted by one of the methods provided for in the Convention;

(2) a period considered adequate by the judge has passed (not less than six months) without any report on the attempted service; and

(3) every reasonable effort has been made by the party requesting service to secure a status report or a certificate of performance from the competent authorities of the state addressed.

Hague Service Convention, Art. 15, ¶ 2. The United States is one of the ten contracting states that has declared that a default judgment can be entered if the preceding conditions are met. *International Judicial Assistance* at 155.

## DISCUSSION

Israel, the Consulate and Marschhauser agree that the applicable provision for service on Israel and the Consulate is Section 1608(a)(2) of the Foreign Sovereign Immunities Act, which incorporates the Hague Convention method of service. In relevant part, the Act provides that:

(a)(2) Service in the courts of the United States and of the States shall be made upon a foreign state or political subdivision of a foreign state ... if no special arrangement exists, by delivery of a copy of the summons and complaint *in accordance with an applicable international convention on service of judicial documents ...*

28 U.S.C.A. § 1608 (West Ann.1992) (emphasis added). In this instance, the "applicable international convention" is the Hague Service Convention, to which both the United States and Israel are signatories.

### A. *Marschhauser's Transmittal of Request for Service of Process Abroad to Israel's Central Authority*

To effectuate service of process, the Convention requires an "authority or judicial officer competent under the *law of the state in which the documents originate [to] forward"* a Request for Service Abroad to the central authority of the receiving state. Hague Service Convention, Art. 3 (emphasis added). "It is therefore, up to the requesting State to determine which are the authorities or officers competent to address a Central Authority." *Practical Handbook on the Operation of the Hague Convention* 36 (1983).

Israel argues that Marschhauser's transmittal did not comply with the Convention, because the Request for Service Abroad must be issued and sent from a judicial officer as defined by Israeli law. Israel, however, misreads Article 3 of the Convention. Article 3, expressly states that the authority or judicial officer must be competent in the state in which the documents originate, not the recipient state. Under United States law, a private attorney is competent to send service of process under *Fed.R.Civ.P.* 4(c)(2)(A), and the United States Department of State has interpreted Article 3 to mean that any marshal, sheriff, court official or attorney au-

thorized to serve process in the domestic action qualifies as a "competent authority" under the Convention. *International Judicial Assistance* at 124.

■ In addition, as noted above, Marschhauser's Requests for Service Abroad were issued by Magistrate Judges who, as court officials, are judicial officers of the United States. Although the Requests for Service Abroad were actually sent to the Central Authority by private attorneys, Article 3 does not require a judicial officer to both issue and send a Request for Service Abroad. Article 3 only requires the judicial officer to forward the Request to the Central Authority. In this case, the issuance of the Request for Service Abroad by a United States Magistrate Judge and the transmittal of the Request by a private attorney are sufficient to meet the requirements of Article 3.

■ Israel also points out that its ratification of the Convention on August 14, 1972, consistent with Israeli law, contained a declaration that:

The State of Israel, in its quality as State of destination, will, in what concerns Article 10, paragraphs b) and c), of the Convention, effect service of judicial documents only through the Directorate of Courts, and only where an application for such service emanates from a judicial authority or from the diplomatic or consular representation of a Contracting State.

Israel argues that this declaration applies to all service attempted under the Convention, including service of process under Article 3. By its own terms, however, the declaration is specifically limited to "Article 10, paragraphs b) and c)." Article 10 only provides for alternative means of service and for the sending of documents, and it has no bearing on Articles 3–6, which prescribe the normal method of service under the Convention. *See International Judicial Assistance* at 150–51 (Article 10 refers to the American process of having attorneys or private parties hire foreign attorneys to serve process in foreign countries); *See also Arco Electronics Control Ltd.*, 794 F.Supp. at 1147 (Court decided

that Article 10 only provides for sending of documents, not sending of service). In this case, Marschhauser did not try to serve process under Article 10 by hiring a foreign attorney or official to serve process. Marschhauser simply followed the normal method for serving process through Israel's central authority.

### B. *The Israeli Central Authority's Failure to Serve Process*

■ The Convention requires the Central Authority to serve the process or arrange to have it served by an appropriate agency. Hague Service Convention, Article 5. If the document has not been served, the Central Authority must send a certificate to the applicant informing the applicant of the reasons that have prevented service. *Id.* at Art. 6. The Israeli Central Authority received Marschhauser's Request for Service Abroad on Israel nearly nine months ago, and the Central Authority received Marschhauser's Request for Service Abroad on the Israeli Consulate over six months ago. (D.E. # 17). The Central Authority, however, has failed to send the required certificate to Marschhauser indicating whether service has been completed.

Pursuant to Article 15 of the Convention, a United States Court may enter a default judgment if no certificate of service or delivery has been received by the applicant, as long as three prerequisite conditions are fulfilled. Hague Service Convention, Art. 15. First, the document must have been transmitted by one of the methods provided for in the Convention. Marschhauser satisfied this requirement by properly sending the Request for Service Abroad to Israel's Central Authority. (D.E. # 17). Second, a period of time not less than six months, considered adequate by the judge in the particular case, must have elapsed since the date of the transmission of the document. In this instance, an adequate period of time, in excess of six months, has elapsed. Finally, the Court must be certain that no certificate of any kind has been received by the applicant. Marschhauser received a letter from an administrator in Israel suggesting that the Request for Service Abroad did not emanate from a proper

source. This letter, however, is not a certificate of any type, and does not conform to the model certificate annexed to the Convention. Hague Service Convention, Art. 6. Therefore, this Court has the authority to enter an Order of Default in this matter, notwithstanding that Marschhauser cannot demonstrate actual proof of service on Israel and the Consulate.

### C. *Entry of Order of Default*

Federal Rule of Civil Procedure 55 provides that default may be entered when a party fails to plead or otherwise defend an action. Marschhauser argues that this Court should issue an Order of Default because Israel and the Consulate failed to answer or challenge sufficiency of service within twenty days after the complaint was received by Israel's Central Authority. This Court, however, has not found that Israel and the Consulate received actual service of process. The Court has only found that Israel's Central Authority failed to serve process or arrange to have it served within six months as is required by the Convention.

 The Court's entry of an Order of Default is within the discretion of the Court. "Where a defendant appears and indicates a desire to contest an action, a court may exercise its discretion to refuse to enter default, in accordance with the policy of allowing cases to be tried on the merits." *Lee v. Brotherhood of Maintenance of Way Employees*, 139 F.R.D. 376, 381 (D.Minn.1991). The law does not favor defaults, and any doubts as to whether a party is in default should be decided in favor of the defaulting party. 10 Charles A. Wright, Arthur R. Miller & Mary K. Kane, *Federal Practice and Procedure* § 2681 at 402-03 (2d ed. 1983). Because Israel and the Consulate have indicated their desire to contest Marschhauser's action and have prayed for an opportunity to do so should the Court be inclined to grant an order of default, the Court exercises its discretion and refuses to enter an order of default at this juncture.

### CONCLUSION

For the reasons stated, it is hereby,

ORDERED AND ADJUDGED that Plaintiffs' Motion for Entry of Default is DENIED WITHOUT PREJUDICE. Defendants Israel and the Israeli Consulate shall have until and including February 1, 1993, to file an answer to Marschhauser's complaint. Failure to file an answer by that date will result in an entry of an Order of Default against Defendants Israel and the Israeli Consulate.

DONE AND ORDERED.